Entered on Docket
June 26, 2012
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**IT IS SO ORDERED.**
**Signed June 25, 2012**

**Arthur S. Weissbrodt**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 11-54980-ASW |
| DAVID and BARBARA SIMONICH, | Chapter 7 |
| Debtor. | |
| GREG RUTLIDGE and JENNIFER RUTLIDGE, | Adv. Proc. No. 11-05207-ASW |
| Plaintiffs, | |
| vs. | |
| DAVID SIMONICH and BARBARA SIMONICH, | |
| DefendantS. | |

**MEMORANDUM DECISION DENYING**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on a Motion for Summary Judgment filed by Defendants David and Barbara Simonich, who are represented by attorney Ralph Guenther. Plaintiffs Greg and Jennifer Rutlidge, who are represented by attorney Shelby Clark, oppose the Motion, and Defendants have filed a reply. Upon consideration of the parties' written arguments and evidence, the

Court sees no need for oral argument. For reasons which the Court shall explain, the Motion is denied.

**Background**

In this adversary proceeding, Plaintiffs assert a single claim under 11 U.S.C. § 523(a)(2)(B) objecting to the dischargeability of Defendants' debt on grounds of fraud and breach of contract. Plaintiffs allege that on January 3, 2011, Defendants purchased a blade-sharpening business from Plaintiffs, along with all of the business' assets, with seller financing for the sum of $1,450,000. Plaintiffs allege that all parties to the transaction executed a "Purchase and Sale of Business Agreement" (hereafter, "the Purchase Agreement"), and that Plaintiffs relied upon Defendants' representation in paragraph 16.b of the Purchase Agreement that Defendants had "funds available to pay the full Purchase Price," which Plaintiffs allege was materially false. Plaintiffs allege that as part of the transaction, Defendants executed two separate promissory notes, one pursuant to a novation, but Defendants defaulted after making only two payments on the second note, then filed for bankruptcy. Plaintiffs allege that based upon the representation in paragraph 16.b of the Purchase Agreement, Defendants' debt to Plaintiffs should not be discharged. The question presented is whether judgment should be entered for the Defendants without a trial.

**Standard of Review**

Summary judgment shall be rendered by the Court if the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 584-85 (1986). All reasonable inferences must be drawn against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970); United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). The Court may not weigh the evidence or make credibility determinations. See Bravo v. City of Santa Maria, 665 F.3d 1076, 1083 (9th Cir. 2011).

Material facts are those that may affect the outcome of the case. A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Because Plaintiffs -- not Defendants -- bear the burden of proof at trial, Plaintiffs must produce sufficient competent evidence to establish a prima facie claim to avoid summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If Plaintiffs do so, then a trial is required.

**Material Facts**

Based upon the evidence submitted by the parties, which the Court construes in a light most favorable to Plaintiffs, the Court makes the following findings for purposes of this Motion, only.[1]

---

[1] Plaintiffs have objected to the Court's consideration of much of Defendants' evidence. It is unnecessary to determine the merits of Plaintiffs' objections, because even considering Defendants' evidence, the Motion for Summary Judgment must be
(continued...)

On January 3, 2011, Defendants purchased an industrial blade sharpening business called "Pacific Industrial Technologies" (hereafter, "the Business") from Plaintiffs for $1,450,000. Plaintiffs provided seller financing for the transaction. Prior to the purchase, Defendant Barbara Simonich served as the Business' accountant.

When Defendants were first interested in buying the Business, Defendants provided a written proposal to Plaintiffs to purchase the Business for $1,250,000. This written proposal -- which Defendants refer to as a "Key Points Memo" -- explained that Defendants could not pay cash for the Business and needed seller financing because Defendants' cash was either tied up in two pieces of real estate or was needed as operating capital, and Defendants could not obtain bank financing. The Key Points Memo also stated: "It is likely that we could obtain the funds to buy you out over the next 24 months if that is your desire." Plaintiff Greg Rutlidge states in his declaration that he considered this language in the Key Points Memo to mean that Defendants had assets which could be sold and that the resulting cash could be used to make payments.

The parties entered into the Purchase Agreement on January 3, 2011. Under the Purchase Agreement, Defendants agreed to pay Plaintiffs $1,450,000 for the Business and made the following representation in paragraph 16.b:

---

[1](...continued)
denied. In addition, many of the facts referenced in the parties' papers and exhibits are not relevant to the Plaintiffs' claim or challenges to the claim, and are therefore immaterial. Only those facts which are material to the analysis are contained in this section.

> The Purchaser has funds available to pay the
> full Purchase Price and any expenses
> acculumated by the Purchaser in connection with
> this Agreement and the Purchaser has not
> incurred any obligation, commitment,
> restriction, or liability of any kind, absolute
> or contingent, present or future, which would
> adversely affect its ability to perform its
> obligations under this Agreement.

Also, in paragraph 18, Defendants made the following representation:

> The Purchaser warrants to the Seller that each
> of the representations and warranties made by
> it is accurate and not misleading at the date
> of Closing. The Purchaser acknowledges that
> the Seller is entering into this Agreement in
> reliance on each warranty and representation.

There were also two loan agreements for the seller-financed loan, one entered into on January 3, 2011, and the other entered pursuant to a novation on February 1, 2011. Under the second loan agreement, Defendants made two payments to Plaintiffs of $14,974 and $9,830 for February and March 2011, but then ceased making payments.

There is conflicting evidence regarding whether Plaintiffs actually and reasonably relied upon paragraph 16.b in the Purchase Agreement. Ms. Simonich states in her declaration that the language in paragraph 16.b was untrue, was boilerplate, and was not mentioned during the negotiations, but that Defendants had no intention of deceiving Plaintiffs. Ms. Simonich's declaration also states that Plaintiffs prepared the Purchase Agreement, which Plaintiffs obtained from the internet. According to Ms. Simonich, in negotiating the sale, neither Plaintiffs nor Defendants were represented by counsel. Defendants have also offered the Key Points Memo and declarations that Plaintiffs knew that Defendants

lacked cash to cover the entire purchase price at the time of the sale.

However, in their respective declarations, Plaintiffs state that Plaintiffs relied upon the statement in paragraph 16.b and understood that "funds" encompassed Defendants' assets, including assets which could be converted to money. Both of Plaintiffs' declarations also state that Plaintiffs had seen indicia of Defendants' wealth, including a variety of vehicles, a boat, two houses in wealthy areas of Carmel, membership at a private country club, and expensive furnishings and artwork at Ms. Simonich's place of business. According to the deposition testimony of Mr. Rutlidge, Mr. Rutlidge had a conversation regarding paragraph 16.b in which Mr. or Ms. Simonich stated "[t]hat they had net worth large enough to take care of this . . . basically they had holdings that would cover the -- if they defaulted, and that's why the Personal Guarantee came up." Mr. Rutlidge also testified that he understood "funds" in paragraph 16.b to refer to Defendants' available net worth to cover the obligation in the event of a default.

The parties have also provided conflicting evidence concerning the reason why Defendants stopped making payments on the February 1, 2011 note.[2] However, such evidence pertains to whether

---

[2] Defendants contend that Defendants stopped making payments because Plaintiffs falsely represented that the Business was profitable. For example, Defendants contend that Plaintiffs falsely represented that Plaintiffs had a profitable relationship with the Dole company which would generate at least $40,000 per month of business, with seasonal fluctuations. However, Defendants assert that Dole had terminated Dole's relationship with the Business in October 2010.

Plaintiffs provided contrary evidence about the Business. Specifically, Mr. Rutlidge's declaration states that Mr. Rutlidge informed Ms. Simonich that Dole ceased placing new orders for blade
(continued...)

Defendants had an intent to deceive Plaintiffs -- an issue not presently before the Court -- and not to whether Plaintiffs reasonably relied upon paragraph 16.b of the Purchase Agreement.

**Analysis**

Plaintiffs' claim arises under 11 U.S.C. § 523(a)(2)(B). To better serve the Bankruptcy Code's purpose of giving debtors a fresh start, exceptions to discharge under § 523(a)(2) are strictly construed. In re Sicroff, 401 F.3d 1101, 1104 (9th Cir. 2005). Under § 523(a)(2)(B), a debtor may be denied a discharge for a debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-- . . .
> (B) use of a statement in writing--
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive[.]

The Ninth Circuit Court of Appeals has interpreted this statute as requiring proof of seven elements:

> (1) a representation of fact by the debtor,

---

[2](...continued)
sharpening in October 2010, and that the cessation of business was evident from records provided to Ms. Simonich as the accountant for the Business. According to the declaration of Jennifer Rutlidge, because of the drop-off in business from Dole, an employee was terminated and Ms. Simonich was responsible for filling out paperwork from the unemployment office. Both Plaintiffs also state that Plaintiffs told both Defendants during negotiations for the sale of the Business that Dole was not currently sending blades to the Business for sharpening.

```
                (2) that was material,
                (3) that the debtor knew at the time to
                     be false,
                (4) that the debtor made with the intention of
                     deceiving the creditor,
                (5) upon which the creditor relied,
                (6) that the creditor's reliance was
                     reasonable,
                (7) that damage proximately resulted from the
                     representation.
```

In re Candland, 90 F.3d 1466, 1469 (9th Cir. 1996).

The statement on which Plaintiffs claim to have relied is paragraph 16.b of the Purchase Agreement. This statement is:

> The Purchaser has funds available to pay the
> full Purchase Price and any expenses
> acculumated by the Purchaser in connection with
> this Agreement and the Purchaser has not
> incurred any obligation, commitment,
> restriction, or liability of any kind, absolute
> or contingent, present or future, which would
> adversely affect its ability to perform its
> obligations under this Agreement.

The Purchase Agreement is a writing within the purview of § 523(a)(2)(B). According to Defendants, Plaintiffs cannot establish actual, reasonable reliance on paragraph 16.b of the Purchase Agreement, because Plaintiffs knew that Defendants did not have cash to cover the purchase price and had received a contrary statement from Defendants that Defendants could not obtain bank financing and required seller financing.[3] In short, Defendants only challenge Plaintiffs' ability to produce evidence in support of elements 5 and 6 of Candland.

Plaintiffs have the burden of producing evidence that Plaintiffs actually and reasonably relied on paragraph 16.b. Reasonable reliance on a written representation is defined as "that

---

[3] Defendants previously argued that Plaintiffs could not, as a matter of law, demonstrate an intent to deceive, but in their reply brief, Defendants concede that there is a factual issue on this point and have withdrawn the argument.

degree of care which would be exercised by a reasonably cautious person in the same business transaction under similar circumstances." In re Gertsch, 237 B.R. 160, 170 (B.A.P. 9th Cir. 1999) (citations and internal quotations omitted). Whether a creditor acted reasonably depends upon the circumstances. Id. However, if there is evidence of a materially fraudulent statement, a creditor is not expected to engage in much investigation before relying on the representation. Id.

Plaintiffs have produced evidence that Plaintiffs actually relied on the false representation in paragraph 16.b.[4] Specifically, both Plaintiffs provided declarations stating that each Plaintiff actually relied upon the statement in paragraph 16.b and understood that "funds" encompassed all of Defendants' assets, including assets which could be converted to money. According to Plaintiffs' declarations, Plaintiffs believed that Defendants had sufficient wealth which could be converted to cash, including several assets such as a boat, vehicles, and two houses.

Defendants argue that the word "funds" is synonymous with cash, and because Plaintiffs knew that Defendants lacked sufficient cash on hand to cover the purchase price based upon the Key Points Memo and Plaintiffs' need for seller financing, this raised a "red flag" and Defendants could not objectively, reasonably rely on paragraph 16.b as a matter of law. Defendants seem to contend that the statement in the Key Points Memo is impossible to reconcile with paragraph 16.b. However, the word "funds" has multiple definitions, including cash and other resources. See Webster's New

---

[4] The Declaration of Ms. Simonich acknowledges that the representation in paragraph 16.b was untrue.

Collegiate Dictionary (1976) (defining "fund" as "an available quantity of material or intangible resources"). Consequently, it is possible that a reasonably cautious seller in similar circumstances could have relied upon a representation that a buyer had "funds" available to pay the entire purchase price, even knowing that the buyer lacked sufficient cash on hand to cover the purchase price. Accordingly, the representations in the Key Points Memo do not necessarily contradict paragraph 16.b or require a finding that Plaintiffs could not reasonably rely on paragraph 16.b as a matter of law. Rather, there is a factual dispute between the parties about whether Plaintiffs actually and reasonably relied upon paragraph 16.b when entering into the transaction with Defendants. At the very least, there are credibility issues which cannot be resolved within the context of a summary judgment motion. Therefore, the Defendants' Motion for Summary Judgment is denied. The hearing set for June 28, 2012 at 2:15 p.m. is vacated.

IT IS SO ORDERED.

*** END OF ORDER ***

```
                        Court Service List

Shelby L. Clark
Abronson Law Offices
236 N. Santa Cruz Ave., #227
Los Gatos, CA 95030


Ralph P. Guenther
Law Offices of Duffy and Guenther
149 Bonifacio Pl.
Monterey, CA 93940
```